**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT GREEN** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 25-2193** |
| | : | |
| **SUGARHOUSE HSP GAMING LP** | : | |

# MEMORANDUM

**MURPHY, J.** **OCTOBER 13, 2026**

In this employment-discrimination case, Robert Green alleges that Rivers Casino fired him for impermissible reasons — his disability and corresponding need for medical leave. Rivers denies this allegation. It says Rivers let Mr. Green take all the leave he requested, provided that he gave proper contemporaneous notice consistent with company policy. The reason that Mr. Green was fired, according to Rivers, is that he missed work several times without giving proper notice of his need for leave. Because Rivers points to record evidence supporting its version of events and Mr. Green does not, we grant Rivers's motion for summary judgment in full.

## I. FACTUAL BACKGROUND

In 2015, Robert Green began working for Sugarhouse HSP Gaming LP (better known as Rivers Casino) in its security department. DI 31-3 ¶ 2. Mr. Green did well at Rivers, transferring to the table games department after completing dealer school in 2016, before being promoted to a supervisor role in 2021. *Id.* ¶¶ 3-4. In 2021, Mr. Green began to experience health issues that required him to take intermittent Family and Medical Leave Act (FMLA) leave. *Id.* ¶¶ 25-27. Rivers's policies provided that when Mr. Green needed to take FMLA leave, he had to notify both Rivers and its insurer, MetLife. *Id.* ¶¶ 53, 55. If Mr. Green failed to tell MetLife about the leave, then Rivers counted the day as an absence. *See id.* ¶ 57. Rivers's

attendance policy provided that if an employee recorded more than eight absences within a year (with tardiness under 60 minutes counting as half an absence), he could be fired. *Id.* ¶¶ 32-39.

Mr. Green knew about this policy and generally had no issues providing proper notice. During his tenure with Rivers, he notified MetLife of his FMLA absences approximately 80 to 100 times. DI 31-3 ¶¶ 51, 58. When Mr. Green provided notice to MetLife, MetLife would promptly and routinely issue approval letters and Rivers would not record the reported days as absences. *Id.* ¶¶ 63, 85. Mr. Green was also generally able to provide notice to Rivers without issue, but he reports that on one occasion a manager, Dominic Montenero, told him, "Just come on in to work, Rob. There's nothing wrong. You should just, you know, stop playing around." *Id.* ¶ 144. Mr. Green does not recall the approximate date when that comment occurred. DI 31-4 at 186.[1]

Between April 22, 2023, and February 1, 2024, Mr. Green accrued 9.5 absences. DI 31-3 ¶¶ 88-99. On February 14, 2024, Mr. Green, who regularly monitored his attendance record, emailed a Rivers supervisor claiming that some of the recorded absences were FMLA days. *Id.* ¶¶ 49, 103. The supervisor and other management personnel reviewed the attendance records, found no recorded FMLA absences from MetLife on the relevant days, and determined that Mr. Green had exceeded the limit of permissible absences. *Id.* ¶ 105. Rivers then fired Mr. Green on February 19, 2024. *Id.* ¶¶ 106-07. About a month later, Mr. Green called MetLife to report FMLA leave on two of the days that were counted as absences, and MetLife issued approval letters for those days. *Id.* ¶¶ 123-24.

In 2025, Mr. Green sued Rivers. His operative complaint alleges that Rivers violated the

[1] We adopt the pagination of the CM/ECF filing system.

Americans with Disabilities Act (ADA) (Count I), the FMLA (Count II), and the Philadelphia Fair Practices Ordinance (PFPO) (Count III). DI 25 at 6-11. For each count, Mr. Green alleges both direct violations of the statutes and unlawful retaliation for conduct protected by them. *Id.* ¶¶ 47, 56, 66.

## II. MOTION AT ISSUE

Following discovery, Rivers moved for summary judgment on all of Mr. Green's claims. DI 31. As to the FMLA interference claim, Rivers argues that it permitted Mr. Green to take FMLA leave whenever he provided proper notice and that applicable regulations expressly provide that he was not entitled to take leave absent that notice. DI 31-5 at 11-13 (citing 29 C.F.R. §§ 825.302(c)-(d), 825.303(c)). As to Mr. Green's ADA and PFPO claims, Rivers argues that they fail because (1) Mr. Green was not qualified for his job given his failure to comply with the attendance policy, and (2) even if Mr. Green were qualified, his failure to comply with the policy provided a legitimate, non-discriminatory reason for Rivers to fire him. *Id.* at 18-22. As to the retaliation claims, Rivers again argues that it fired Mr. Green for his failure to comply with the attendance policy, not in retaliation for his engaging in conduct protected by the ADA, PFPO, or FMLA. *Id.* at 16-17, 22-24.

Mr. Green opposes summary judgment on all counts. As to FMLA interference, Mr. Green argues that Rivers interfered with his ability to take FMLA leave when Mr. Montenero told him to "stop playing around." DI 32 at 14. As to ADA and PFPO disability discrimination, Mr. Green argues (1) that he was qualified for his position because he was capable of other essential job functions besides complying with the attendance policy, and (2) that his failure to comply with the attendance policy is not a legitimate non-discriminatory reason for his firing because the policy is "unlawful when applied to a disabled employee without considering the

possibility of reasonable accommodations." DI 32 at 8-10. As to retaliation under the FMLA, the ADA, and the PFPO, Mr. Green argues that the fact he was fired shortly after asking for clarification on whether his FMLA leave was properly recorded shows a causal connection between his protected conduct and an adverse employment action. *Id.* at 12-13. Mr. Green further argues that Rivers's non-retaliatory justification for the firing — his failure to comply with the attendance policy — was pretext for retaliation against him for asking about his FMLA days being counted as absences. DI 32 at 15.

## III. LEGAL STANDARDS

We grant summary judgment when the movant demonstrates "that there is no genuine dispute as to any material fact" such that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" where there is evidence that could allow a reasonable jury to side with the non-movant as to that fact. *See id.* "When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007) (citing *Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 431 (3d Cir. 1997)). But once the movant identifies the parts of the record that it believes demonstrate its entitlement to summary judgment, the non-moving party must come forward with evidence to create a genuine dispute — "bare assertions, conclusory allegations or suspicions" are not enough. *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

## IV. DISCUSSION

### A. We grant summary judgment on Mr. Green's ADA and PFPO claims.

***ADA & PFPO Discrimination.*** Where, as here, there is no direct evidence of disability discrimination, ADA and PFPO discrimination claims are governed by the three-step *McDonnell Douglas* burden-shifting framework. *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 668 (3d Cir. 1999); *Ransom-Ellison v. Childrens Hosp. of Philadelphia*, 826 F. Supp. 3d 616, 624-25 (E.D. Pa. 2026). First, the plaintiff must establish a prima facie case of discrimination by "proving by a preponderance of the evidence that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was dismissed despite being qualified; and (4) he was ultimately replaced by a person sufficiently outside the protected class to create an inference of discrimination." *Walton*, 168 F.3d at 668 (citation modified). Once the plaintiff establishes a prima facie case, "the burden of production shifts to the employer to articulate some legitimate, nondiscriminatory reason for the" adverse employment action. *Id.* (citation omitted). If the employer proffers such a reason, "the plaintiff must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* (citation omitted).

Here, even assuming that Mr. Green made out a prima facie case, summary judgment is appropriate because there is no genuine dispute that Rivers fired him for a legitimate, non-discriminatory reason. Rivers's proffered reason for firing Mr. Green is that he exceeded the number of allowable absences in violation of the attendance policy. DI 31-5 at 20. Mr. Green

does not dispute that he exceeded the total number of allowable absences. DI 32 at 9-10. He does not claim that he provided timely notice to MetLife for any of the days marked as absences, such that they should have been counted as FMLA leave. *Id.* Nor does he argue that Rivers's proffered attendance-policy-non-compliance reason is pretextual. *Id.* Instead, he argues that non-compliance with the attendance policy cannot be a legitimate, non-discriminatory reason because the policy "is unlawful when applied to a disabled employee without considering the possibility of reasonable accommodations." *Id.* at 10.

We are not persuaded. Mr. Green points to no record evidence suggesting that his disability prevented him from complying with the attendance policy's notice requirement without accommodation. *See generally* DI 32. To the contrary, the record shows that Mr. Green was capable of notifying MetLife without an accommodation; he did so on 80 to 100 occasions. DI 31-3 ¶ 58. Moreover, even if there were evidence that Mr. Green's health issues prevented him from providing notice to MetLife without accommodation, Rivers's policy would still not be unlawful as applied to Mr. Green because there is no evidence that Mr. Green ever indicated to Rivers that he needed an accommodation from the notice requirement. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3d Cir. 1999) (noting an employer's duty to engage in the interactive process to determine reasonable accommodations is triggered by "proper notice"). While there may be hypothetical situations in which a strict application of the notice requirement could violate the ADA or PFPO — such as if an employee's disability prevented them from providing timely notice and Rivers refused to provide a reasonable accommodation — there is no evidence that would warrant such a finding here.

***ADA & PFPO Retaliation.*** Like ADA and PFPO discrimination claims, ADA and PFPO

retaliation claims are governed by *McDonnell Douglas* in the absence of direct evidence. *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022); *Ransom-Ellison*, 826 F. Supp. 3d at 624-25. At step one, an employee must establish a prima facie case by showing that (1) he was engaged in protected activity, (2) his employer took adverse action after or at the same time as that activity, and (3) there is a causal connection between the activity and the adverse action. *Samuel Grossi & Sons, Inc.*, 49 F.4th at 346. At step two, the employer must proffer a legitimate, non-retaliatory reason for the adverse action. *Id.* Then at step three, the burden shifts "back to the plaintiff to demonstrate that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.* (citation modified).

We can again assume without deciding that Mr. Green has established a prima facie case because there is no genuine dispute that Rivers fired him for a legitimate, non-retaliatory reason: Mr. Green's non-compliance with the attendance policy. Mr. Green's only response to this proffered reason is that the policy "is unlawful when applied to disabled employees." DI 32 at 13. We are not persuaded for the reasons discussed above with respect to his disability discrimination claims.

**B. We grant summary judgment on Mr. Green's FMLA claims.**

***FMLA Interference.*** To establish an FMLA interference claim, an employee must show that "(1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." *Ross v. Gilhuly*,

755 F.3d 185, 191-92 (3d Cir. 2014) (quoting *Johnson v. Cmty. Coll. of Allegheny County*, 566 F. Supp. 2d 405, 446 (W.D. Pa. 2008)). Rivers argues that there is no genuine dispute that Mr. Green received all the leave to which he was entitled because Rivers let him take leave whenever he provided proper notice. DI 31-5 at 14. Mr. Green counters there is a genuine dispute whether he was given all the required leave because he "testified that sometimes he would call out of work and attempt to use an FMLA day only to be told by Defendant's day shift supervisor, Dominic Montenero, to 'stop playing around.'" DI 32 at 14.

We agree with Rivers. Mr. Green points to no evidence that Mr. Montenero's remark led to him attending work when he was entitled to FMLA leave or to FMLA days being improperly marked as absences. *See generally* DI 32. Further, Mr. Green stated in his deposition that he did not know the approximate date when Mr. Montenero was "giving [him] a hard time about [his] FMLA absence." DI 31-4 at 186. Without supporting evidence showing any specific days on which he was unable to take leave, Mr. Green's "vague testimony" about Mr. Montenero's purported interference is insufficient to defeat summary judgment. *See Gaddis v. Brandywine Senior Care, Inc.*, 2019 WL 4384139, at *6 (E.D. Pa. Sept. 11, 2019).

***FMLA Retaliation.*** As with the ADA and PFPO claims, Mr. Green's FMLA retaliation claims are governed by the *McDonnell Douglas* burden-shifting framework. *See Lichtenstein v. U. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012). At the summary judgment stage, the prima facie case requires the employee to point to record evidence showing "(a) [the] invocation of an FMLA right, (b) termination, and (c) causation." *Id.* The latter two steps — the legitimate non-retaliatory reason and pretext — are materially the same as in the ADA and PFPO context. *See id.*; *supra.* As with ADA and PFPO claims, we will assume without deciding that

Mr. Green has made out a prima facie case, and grant summary judgment based on Rivers's legitimate non-discriminatory reason that Mr. Green failed to comply with the attendance policy.

Mr. Green resists summary judgment on FMLA retaliation on two grounds, neither of which is persuasive. First, he argues that "evidence in the record" discussed in the ADA/PFPO section of his opposition shows Rivers's stated reason is pretextual. DI 32 at 14-15. But the ADA/PFPO section of Mr. Green's opposition does not discuss pretext at all. DI 32 at 7-13. Second, Mr. Green asserts (without citation) that "the only reason Defendant started looking into/calculating Plaintiff's attendance credits was because Plaintiff was questioning if they were being tracked correctly," which he claims demonstrates pretext. DI 32 at 15. But Mr. Green's unsupported assertion of Rivers's reasons for looking into his attendance cannot create a genuine dispute of fact without citation to any record evidence. And even if Mr. Green could provide record support for this contention, it would not show the policy violation is pretext for retaliation. It is not retaliation to fire someone for a legitimate policy violation just because the causal chain leading to the discovery of that violation involved protected activity; rather, the firing or other adverse employment action must be *motivated* at least in part by the protected activity. *See Lichtenstein*, 691 F.3d at 302.

## V. CONCLUSION

Because Rivers has identified a legitimate non-discriminatory and non-retaliatory reason for firing Mr. Green, and because Mr. Green has identified no record evidence that would allow a reasonable jury to conclude that reason is pretextual, we will grant summary judgment to Rivers on Mr. Green's ADA (Count I), FMLA (Count II), and PFPO (Count III) claims. With all claims against Rivers dismissed, we will direct the Clerk of Court to close this case. An

appropriate order will follow.